UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| AUDREY G., et al.,<br><br>               Plaintiffs,<br><br>       v.<br><br>CITY OF LAFAYETTE, et al.,<br><br>             Defendants. | Case No.  21-cv-03545-WHO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 14 |

Plaintiffs Audrey G., Devin G., and Jesse B., minors, and James Larry Benton, Sr., (collectively, "plaintiffs") bring nine causes of action in their First Amended Complaint ("FAC") based on alleged violations of their civil rights by Lafayette police officers during an incident on a highway.  As alleged, this incident plausibly supports claims for intentional infliction of emotional distress and negligence.  The officers involved are not known to plaintiffs; I will allow these claims to proceed to discovery to identify them.

But as defendants the City of Lafayette, Officer White, Police Chief Ben D. Alldritt, and Contra Costa County point out in their motion to dismiss, most of the causes of action are not sufficiently pleaded.  Plaintiffs attempt to remedy those defects by describing in their briefing events not alleged in the FAC; this is improper.  They need to allege in an amended complaint material facts that support their causes of action, including what precipitated the incident on the freeway.  The FAC is DISMISSED with respect to all claims except for intentional infliction of emotional distress and negligence.  While I will grant leave to amend most of the remaining claims, plaintiffs should consider which ones are actually supported by the facts they allege before amending.

United States District Court
Northern District of California

**BACKGROUND**

The events giving rise to this case occurred on May 6, 2020, commencing in Lafayette, California, and continuing into Alameda County via Highway 24.  FAC [Dkt. No. 8] ¶ 10. Plaintiffs, who are African American, "briefly" entered a Lafayette retail store to purchase bait for a fishing trip.  *Id*. at ¶¶ 3, 11.  Shortly after they left the store parking lot in their vehicle, Benton, who was driving, noticed that a police car was behind them.  *Id*. at ¶ 12.  Two Lafayette police vehicles then followed Benton onto Highway 24.  *Id.*

The plaintiffs allege that police "harassed" Benton as he drove through the Caldecott Tunnel and into Berkeley, despite that he had broken no laws nor committed any traffic violations. *Id*. at ¶¶ 13–14.  They contend that one police car "swerved in front and back" of Benton's car, "pulled too close to his rear bumper, flashed a blinding spotlight into the car and persisted in a series of dangerous maneuvers" as Benton drove at 65 miles per hour.  *Id*. at ¶ 12.  Neither police car activated a siren or flashed lights.  *Id*. at ¶ 13.  Police did not direct Benton to pull over, nor did he do so.  *Id*.  Instead, plaintiffs allege that officers used the spotlight, which "blinded" Benton and made him fear that he would "lose control of the car and injure the children in his care."  *Id*. at ¶ 15.  The children were "terrified and traumatized" by this event.  *Id.*

On or about November 3, 2020, plaintiffs filed a government tort claim with the Lafayette Police Department ("LPD") related to the incident.  *Id*. at ¶ 19.  Ten days later, the LPD rejected the claims.  *Id*. at ¶ 20.  On or about March 23, 2021, plaintiffs filed another government tort claim with Contra Costa County; the County rejected it because of untimeliness.  *Id*. at ¶¶ 21–22. Plaintiffs applied to file a late claim to the Board of Supervisors, which granted the application only for the minor plaintiffs.  *Id.* at 22.  On July 13, 2021, the County denied their claims.  *Id.*

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant

2

United States District Court
Northern District of California

1   is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation

2   omitted).  There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

3   While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts

4   sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555,

5   570.

6           In deciding whether the plaintiff has stated a claim upon which relief can be granted, the

7   court accepts the plaintiff's allegations as true and draws all reasonable inferences in their favor.

8   *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not

9   required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact,

10  or unreasonable inferences."  *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

11  2008).

12          If the court dismisses the complaint, it "should grant leave to amend even if no request to

13  amend the pleading was made, unless it determines that the pleading could not possibly be cured

14  by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  In making

15  this determination, the court should consider factors such as "the presence or absence of undue

16  delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments,

17  undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport*

18  *Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

19                                      **DISCUSSION**

20  **I.     SECTION 1983 CLAIM**

21          Plaintiffs bring a 42 U.S.C. § 1983 claim against officer White for depriving them of rights

22  "secured to them by the Constitutions and the laws of the United States and California."[1]  FAC at

23  ¶ 28.  Section 1983 is only a viable cause of action "for violations of the federal Constitution and

24  laws"—not state law.  *Sweaney v. Ada Cty.*, 119 F.3d 1385, 1391 (9th Cir. 1997).  Plaintiffs clarify

25  in their Opposition that the "FAC here alleges a violation of the federal constitution, and not a

26  violation of state law."  Oppo. to Mot. to Dismiss ("Oppo.") [Dkt. No. 17] 6:6–7.  Accordingly, I

27

28  ───────────────
    [1] Plaintiffs state that they do not know White's first name, nor is it stated in the defendants'
    filings.

                                            3

1    consider the plaintiffs' Section 1983 claim based only on the alleged violations of federal law.

2        Section 1983 is not a standalone source of substantive rights; rather, it provides a "method

3    for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3

4    (1979). "The first step in any such claim is to identify the specific constitutional right allegedly

5    infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

6        Plaintiffs list multiple rights without delineating where those rights are derived from. *See*

7    FAC at ¶ 28 (asserting plaintiffs' "rights to be free from unreasonable search and seizure,

8    excessive force, threats, intimidation or coercion under color of law, and equal protection of the

9    law."). However, the FAC falls short of failing to "give the defendant fair notice of what the

10   claim is and the grounds upon which it rests," as the rights listed are readily identified in the

11   Constitution. *Twombly*, 550 U.S. at 545 (internal citation omitted). The defendants have

12   accurately identified the specific amendments under which each right is granted: the Fourth and

13   Fourteenth Amendments. *See* Mot. to Dismiss ("MTD") [Dkt. No. 14] 4. The plaintiffs identified

14   the same amendments in their Opposition. *See* Oppo. at 6–10. Below I evaluate the Section 1983

15   claim as it relates to the Fourth and Fourteenth Amendments.

16       **A.      Fourth Amendment Search and Seizure**

17       The Fourth Amendment to the Constitution provides:

18           "The right of the people to be secure in their persons, houses, papers,
             and effects, against unreasonable searches and seizures, shall not be
19           violated, and no Warrants shall issue, but upon probable cause,
             supported by Oath or affirmation, and particularly describing the
20           place to be searched, and the persons or things to be seized."

21       U.S. Const. amend. IV. Dismissal of a Fourth Amendment claim is warranted when the

22   court concludes that plaintiffs could prove no facts establishing a search or seizure. *See Brower v.*

23   *Cty. of Inyo*, 489 U.S. 593, 598 (1989). A search or seizure alone is insufficient to create liability

24   under Section 1983; the search or seizure must also be "unreasonable." *See id.* at 599. A

25   fundamental defect in the FAC is that plaintiffs have neither alleged a search nor a seizure.

26       **1.      Search**

27       The threshold consideration in whether a search occurs under the Fourth Amendment is

28   whether "a person has a constitutionally protected reasonable expectation of privacy." *Katz v.*

United States District Court
Northern District of California

*United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring).  Plaintiffs argue in their

Opposition that "police had no right to shine a light into a private vehicle that was not being pulled

over, was not the subject of a traffic stop, [and] where the officers were not even pretending to be

concerned about violations of the Vehicle Code."  Oppo. at 7:4–7.  They further contend that

"[a]bsent any reasonable suspicion of wrongdoing, the interior of one's car is one's private space."

*Id*. at 7:7–8.  A person in a car has a lesser reasonable expectation of privacy than in a home, as a

car "travels public thoroughfares where its occupants and its contents are in plain view." *Cardwell

v. Lewis*, 417 U.S. 583, 590 (1974).  "There is no legitimate expectation of privacy shielding that

portion of the interior of an automobile which may be viewed from outside the vehicle by either

inquisitive passersby or diligent police officers." *Texas v. Brown*, 460 U.S. 730, 740 (1983)

(internal citations omitted).  And the use of a searchlight or flashlight by a police officer is not

prohibited by the Constitution.  *See United States v. Lee*, 274 U.S. 559, 563 (1927); *see also

United States v. Hood*, 493 F.2d 677, 680 (9th Cir. 1974) (holding that an officer's use of a

flashlight to look inside a car "did not constitute a search and what he saw was encompassed

within the plain view doctrine.").

Given the lesser degree of privacy in vehicles, police officers may look inside their

windows—even with a flashlight—without running afoul of the Fourth Amendment.  Plaintiffs

cite no authority to the contrary.  Because there was no search, the plaintiffs have not adequately

pleaded a Section 1983 claim arising under this aspect of the Fourth Amendment.

### 2. Seizure

"It is quite plain that the Fourth Amendment governs 'seizures' of the person which do not

eventuate in a trip to the station house and prosecution for crime—'arrests' in traditional

terminology." *Terry v. Ohio*, 392 U.S. 1, 16 (1968).  However, not every interaction between a

police officer and a citizen constitutes a seizure.  *Id*. at 19 n.16.  "Only when the officer, by means

of physical force or show of authority, has in some way restrained the liberty of a citizen may we

conclude that a 'seizure' has occurred." *Id*.  This restraint occurs only if a reasonable person

would believe that he was not free to leave, in light of all of the surrounding circumstances.

*United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (listing examples of seizure, including:

"the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language indicating that compliance with the officer's request might be compelled.").

Plaintiffs argue that they were seized because police "unreasonably interfered with [p]laintiffs' freedom of movement" and that a "reasonable person would not have felt free to leave." Oppo. at 8:3–5. The plaintiffs cite the officers' alleged actions on the highway— swerving around Benton's car, pulling "too close" to its back bumper, flashing the light into the car, and other "dangerous maneuvers." *See* FAC at ¶ 12. But the FAC does not state, as plaintiffs later argue, that Benton was "forced to slow down, to change lanes, and otherwise to begin to stop and to stop in response to the officers' dangerous and reckless driving." *See* Oppo. at 6:20–21. Instead, plaintiffs say that further facts "will be alleged in subsequent amendments to the FAC." *Id*. at 6:22–23.

I will give them that opportunity. As pleaded, the FAC fails to state that police restricted the driver's or passengers' freedom of movement. They have not adequately pleaded a Section 1983 claim using this portion of the Fourth Amendment.

## B.     Fourteenth Amendment Due Process Clause

The Due Process Clause of the Fourteenth Amendment prohibits the state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. If a constitutional claim is "covered by" a specific constitutional provision, the claim must be analyzed under that provision's standard, not the standard of substantive due process. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 842–43 (1998).

Here, the plaintiffs identify their violated liberty interest as "to be free from unreasonable searches and seizures." Oppo. at 9:9. If a search or seizure were adequately alleged in the FAC, then any claim arising from the alleged search or seizure would be analyzed under the Fourth Amendment. But the relevant case law forecloses finding that either occurred, as described above. *See Cty. of Sacramento*, 523 U.S. at 843–44 (utilizing the substantive due process analysis because neither a search nor seizure occurred, so the claim was not covered by the Fourth Amendment). Accordingly, plaintiffs' claim of a due process violation based on unreasonable search and seizure

may be analyzed through the substantive due process lens.

A substantive due process claim can only succeed if a plaintiff shows that the defendant deprived them of a protected life, liberty, or property interest in a manner that "shocks the conscience." *Cty. of Sacramento*, 523 U.S. at 848–49; *Rochin v. California*, 342 U.S. 165, 172 (1952). The Fourteenth Amendment is not a "font of tort law to be superimposed upon whatever systems may already be administered by the States." *Paul v. Davis*, 424 U.S. 693, 701 (1976). Moreover, the Supreme Court is reluctant to expand the concept of due process. *See Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992).

Plaintiffs cite their "liberty interest to be free from unreasonable searches and seizures" as the basis for their substantive due process claim. Oppo. at 9:8–9. But since no search or seizure occurred, at least as currently alleged, plaintiffs have asserted no deprivation of a liberty interest under the substantive due process standard and have not adequately pleaded a violation of the Due Process Clause.

### C.    Fourteenth Amendment Equal Protection Clause

A claim brought under the Fourteenth Amendment's Equal Protection Clause must state that the plaintiff was intentionally treated differently than other similarly situated individuals. *Recinto v. U.S. Dep't of Veterans Affs.*, 706 F.3d 1171, 1177 (9th Cir. 2013). To survive dismissal, a complaint must plausibly suggest that the defendants acted with a discriminatory intent or purpose. *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). The facts must show that defendants acted "not for a neutral, investigative reason but for the purpose of discriminating." *See Iqbal*, 556 U.S. at 677. "Bare assertions" and conclusory allegations of discriminatory purpose will not suffice. *See id.* at 681.

In their briefing in support of their equal protection claim, plaintiffs point to facts entirely absent from the FAC that seem to suggest liability against a party that is not a defendant in this case: a retail store. Plaintiffs assert "outrageous harassment by police because the plaintiffs were singled out by the retail store, resulting in the police being called to investigate them." Oppo. at 12:27–28. Insofar as plaintiffs accuse police of acting with a discriminatory purpose, they ask me to draw an inference unsupported by the facts listed in their Opposition, and again absent from the

1  FAC.  Oppo. at 13:4–7 ("The mere fact that the Lafayette police showed up and followed

2  [p]laintiffs from the store parking lot and onto the freeway, then engaged and encountered them in

3  a way that any reasonable person would view as creating terror can only be viewed as

4  demonstrating racial animus.").   The discriminatory intent alleged in the FAC and Opposition

5  mirrors the conclusory language of the complaint dismissed in *Iqbal*.  *See* 556 U.S. at 680–81.

6  Plaintiffs have not adequately pleaded a Section 1983 claim using the Fourteenth Amendment.

7        **D.      Section 1983 Claim Against White**

8        Even if the plaintiffs had adequately pleaded violations of the Fourth and Fourteenth

9  Amendments to bring a claim under Section 1983, the claim would fail as to the only named

10 defendant: White.

11       Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain

12 statement of the claim showing that the pleader is entitled to relief."  To satisfy Rule 8, plaintiffs

13 must "plead that each Government-official defendant, through the official's own individual

14 actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Importantly, Rule 8 "does not

15 unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Id*. at

16 678–79.  Rather, the complaint must assert "well-pleaded factual allegations to advance to

17 discovery."  *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021).

18       Here, defendants assert that plaintiffs have failed to state any claim against White because

19 they "have not pled any facts regarding Officer White's involvement in the alleged police

20 encounter."  Reply [Dkt. No. 18] 2:12–13.  Plaintiffs respond that they "clearly allege in the FAC

21 that Officer White was at the scene of the events of May 6, 2020, and that he participated in

22 them," citing to ¶ 6:

23            "Defendant White … is a peace officer employed by either LPD
             and/or Contra Costa County.  He acted with deliberate indifference
24           towards [p]laintiffs' safety on May 6, 2020 and violated their
             constitutional and civil rights under federal and state law while acting
25           under color of state law and in the course and scope of his
             employment by Defendant LPD.  Plaintiffs sue Defendant White in
26           his individual capacity.  His true first name is unknown to Plaintiffs.
             As soon as Plaintiffs can discover his full and complete name, they
27           will seek leave to amend from the Court…"

28 Oppo. at 10:15–16.  But the plaintiffs then admit that they "do not yet know . . . how exactly he

*United States District Court*
*Northern District of California*

1   participated in these events." *See id.* at 10:24–25.

2         The quoted paragraph, and the entire FAC, is insufficient to adequately plead that White

3   was involved in the encounter.  Plaintiffs do not allege any fact demonstrating that White was

4   present during the incident, was inside one of the vehicles, interacted with the plaintiffs in any

5   way, or was even on duty.  Plaintiffs' allegations are conclusory and do not state a Section 1983

6   claim against White.

7         For all of these reasons, the plaintiffs' Section 1983 claim against White is DISMISSED

8   without prejudice. [2]

9   **II.      STATUTE OF LIMITATIONS FOR BENTON'S CLAIM**

10        Under the California Government Claims Act, a claim for injury to a person against a

11  public entity must be properly filed within six months of the date the cause of action began to

12  accrue.  Cal. Gov't Code § 911.2(a).  "The filing of a claim is a condition precedent to the

13  maintenance of any cause of action against the public entity and is therefore an element that a

14  plaintiff is required to prove in order to prevail."  *Del Real v. City of Riverside*, 95 Cal. App. 4th

15  761, 767 (2002).  Courts have interpreted Section 911.2(a) as strictly enforceable and confirmed

16  that a claim must satisfy the express provisions of the statute.  *See DiCampli-Mintz v. Cty. of*

17  *Santa Clara*, 55 Cal. 4th 983, 987 (2012).  Even where the public entity has actual knowledge of

18  the facts that may support the claim, a claim is barred when the filing provision was not followed.

19  *Id.* at 989–91.  Beyond strict compliance, the only way to "substantially comply" with the Section

20  is if there is actual receipt of a misdirected claim by the public entity within the statute of

21  limitations.  *See Jefferson v. City of Fremont*, No. C-12-0926-EMC, 2013 WL 1747917, at *9

22  (N.D. Cal. Apr. 23, 2013).

23        Plaintiffs did not file their claims with Contra Costa County until nearly one year after the

24  incident.  FAC at ¶¶ 10, 21.  Their claims were initially rejected due to untimeliness, and thereafter

25  the minor plaintiffs were granted a second application to file a late claim.  *Id.* at ¶ 22.  Benton was

26  not granted an application to file a late claim, so his claim was not timely filed with the County

27  ─────────────

28  [2] Because the Section 1983 claim against White is dismissed without prejudice, any discussion of qualified immunity is untimely.

United States District Court
Northern District of California

1    and is subject to the six-month statute of limitations.  *See id.*

2        Plaintiffs contend that even though Benton did not file his claim within six months, he is

3    entitled to tolling under the "delayed discovery" rule.  *See* Oppo. at 13:27-14:6 (citing *Norgart v.*

4    *Upjohn Co.*, 21 Cal. 4th 383, 405–06 (1999)).  This rule only applies when, despite reasonable

5    diligence, a plaintiff could not have reasonably discovered facts supporting the cause of action, not

6    where a plaintiff misunderstands the parties' agency relationship and does not properly file.  *See*

7    *id.* at 405 ("the date of accrual . . . is the date on which the plaintiff comes at least to suspect, or

8    have reason to suspect, a factual basis for its elements."); *see also Fox v. Ethicon Endo-Surgery,*

9    *Inc.* 35 Cal. 4th 797, 808–09 (2005).  Plaintiffs were aware of their claim when the incident

10   occurred, and filed a claim with the Lafayette Police Department.  *See* FAC at ¶ 19.   Benton is not

11   entitled to toll his claims against Contra Costa County and they are DISMISSED with prejudice.

## III.    RALPH CIVIL RIGHTS ACT[3]

13       The Ralph Civil Rights Act of 1976 provides that all persons within California "have the

14   right to be free from any violence, or intimidation by threat of violence, committed against their

15   persons or property because of" a protected characteristic, including race.  Cal. Civ. Code §

16   51.7(b)(1); § 51(b).  To prove a violation of Section 51.7, a plaintiff must show:  "(1) the

17   defendant threatened or committed violent acts against the plaintiff; (2) the defendant was

18   motivated by his perception of plaintiff's race; (3) the plaintiff was harmed; and (4) the defendant's

19   conduct was a substantial factor in causing the plaintiff's harm." *Knapps v. City of Oakland*, 647

20   F. Supp. 2d 1129, 1167 (N.D. Cal. 2009) (internal citation omitted).

21       Under the first element of a Section 51.7 claim, "[t]he plain meaning of the word violence .

22   . . clearly involves some physical, destructive act."  *Campbell v. Feld Ent., Inc.*, N75 F. Supp. 3d

23   1193, 1205 (internal citation and quotation marks omitted).  However, as the language of Section

24   51.7 makes clear, a violent act need not actually occur—the threat of one suffices.  *See Ramirez v.*

25   _____

26   [3] If plaintiffs amend the FAC, they should clarify who they are suing for each cause of action.  For
     example, the plaintiffs state that this cause of action is "against Defendant White," but also make
27   accusations against "Defendants White and Does 1 through 10." FAC at ¶¶ 29–32; *see also, e.g.,*
     FAC at ¶ 45–47 (mentioning only the individual defendants and the Lafayette Police Department,
28   which is not named in the Amended Complaint, despite listing "all defendants.").

United States District Court
Northern District of California

1    *Wong*, 188 Cal. App. 4th 1480, 1486 (2010) ("The statute requires violence or a threat of violence;

2    it is, after all, a 'hate crimes' statute."). Notably, there is no threat of violence where there is no

3    expression of intent to harm plaintiffs or plaintiffs' property. *Id.*

4          As an initial matter, it is difficult to ascertain the foundation of the plaintiffs' Ralph Act

5    claim in the FAC, as they intermingle their arguments regarding the Unruh Civil Rights Act. *See*

6    FAC at ¶¶ 29-33. In their Opposition, the plaintiffs clarify that the threat of violence stems from

7    the officers' "actions of terror" on the freeway, referencing the alleged swerving in front of the

8    plaintiffs' car, pulling "too close" to the back bumper, shining the spotlight, and engaging "in a

9    series of dangerous maneuvers." *See* Oppo. at 15:4–7 (citing FAC at ¶¶ 12–18). The plaintiffs

10   allege that "[t]his conduct was intended to threaten [p]laintiffs with the threat of the use of force

11   and did in fact do so." Oppo. at 15:5–6.

12         The claim fails because the plaintiffs have not adequately pleaded the second element: that

13   the police officers were motivated by their perception of the plaintiffs' race. In the Opposition,

14   plaintiffs point to the retail store as the alleged source of any racial animus. *See* Oppo. at 14–15.

15   They suggest that the "reasonable inference" from the FAC's allegations is that "the only reason

16   the police were called was because the Lafayette retail store"—which is not a defendant in this

17   action—"was suspicious of [p]laintiffs solely because of their race, an apparent suspicion adopted

18   by [d]efendant officers." *See id.* at 15:1–3. This inference about why police arrived at the store

19   cannot be drawn from the FAC because no supporting facts are pleaded. Similarly, the plaintiffs

20   do not adequately articulate any facts showing that the officers themselves were motivated based

21   on their perceptions of the plaintiffs' race.

22         For these reasons, the plaintiffs' Ralph Act claim is DISMISSED without prejudice.

23   **IV.    BANE ACT**

24         The Tom Bane Civil Rights Act provides a cause of action "if a person . . . interferes by

25   threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with

26   the exercise or enjoyment by any individual or individuals of rights" secured by federal or

27   California law. Cal. Civ. Code § 52.1(b). Any individual who suffers these harms may bring

28   forth a civil action. *Id.* § 52.1(c). The Bane Act does not itself "provide any substantive

protections; instead, it enables individuals to sue for damages as a result of constitutional

violations." *Reynolds v. Cty. of San Diego*, 84 F.3d 1162, 1170 (9th Cir. 1996) (overruled on

other grounds by *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997)).  A plaintiff

must demonstrate both a violation of their constitutional rights and that the defendant had the

"specific intent" to violate these rights to successfully plead a claim.  *Reese v. Cty. of Sacramento*,

888 F.3d 1030, 1043 (9th Cir. 2018).

Plaintiffs bring this claim based on the alleged Fourth Amendment violations discussed

above.  *See* Oppo. at 15.  Because plaintiffs have not adequately pleaded any Fourth Amendment

violations, and have not otherwise pleaded state constitutional violations, their Bane Act claim

necessarily fails.  *See Reynolds*, 84 F.3d at 1171 ("[B]ecause there is no federal constitutional

violation and no . . . state constitutional violation, there is no conduct upon which to base a claim

for liability under 52.1.").

Even if plaintiffs had adequately pleaded a constitutional violation, the claim would still

fail because there are no facts supporting that the officers harbored specific intent to violate their

rights.  Plaintiffs do not assert in the FAC or in their Opposition that any defendant had the

specific intent to violate their rights, as is required to show a violation of the Bane Act.  *See* Oppo.

at 15 (repeating the assertion that defendants intended to threaten plaintiffs but remaining silent on

specific intent to violate the law).  The claim is DISMISSED without prejudice.

## V.     UNRUH ACT

The Unruh Civil Rights Act provides that all persons in California are "free and equal" and

"entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all

business establishments of every kind whatsoever," regardless of any protected characteristic.

Cal. Civ. Code § 51(b).  It was intended to "create and preserve a nondiscriminatory environment

in California business establishments by 'banishing' or 'eradicating' arbitrary, invidious and

intentional discrimination by such establishments."  *See* Oppo. at 16:5–7 (citing *Angelucci v.

Century Supper Club*, 41 Cal. 4th 160, 167 (2007)).  However, plaintiffs ignore the last three

words of their own citation: "by such establishments."  *Id.*  The Unruh Act's focus is on

discrimination by businesses.  *See Cohn v. Corinthian Colls., Inc.*, 169 Cal. App. 4th 523, 527

1    (2008) ("The objective of the [Unruh] Act is to prohibit businesses from engaging in . . .

2    discrimination."); *McColm v. San Francisco Hous. Auth.*, No. C-06-07378-CW, 2009 WL

3    2901596, at *13 (N.D. Cal. Sept. 4, 2009) ("The objective of the Unruh Act is to prohibit

4    businesses from engaging in unreasonable or arbitrary discrimination.").

5         Plaintiffs' Unruh Act claim is fatally flawed.  They bring the claim against White, a police

6    officer, and other unnamed defendants—not a business.  *See* FAC at ¶¶ 37–39.  Moreover,

7    although the plaintiffs say that they were "singled out by the retail store which then called the

8    police to investigate," the FAC makes no mention of a phone call, a suspicion by the store's

9    employees, or any information supporting that any defendant communicated with the store.  *See*

10   Oppo. at 16:18–19.

11        Further, when the plaintiffs *do* reference alleged actions by the police, those actions

12   occurred *after* the plaintiffs left the store.  The plaintiffs make no allegation that police officers in

13   any way influenced their access to the store.  *See* Oppo. at 16.  Instead, they state that they did not

14   realize that a police car was following them until "after exiting the parking lot."  FAC ¶¶ at 11–12.

15   And the "high speed game of chicken" that the plaintiffs reference occurred on the freeway, after

16   they left the store.  Oppo. at 16:17.

17        Should plaintiffs wish to assert an Unruh Act claim based on deprivation of equal access to

18   the store, they should assert it against the store.  White is not a proper defendant, nor is any other

19   police officer or named defendant.  For these reasons, the claim against them is DISMISSED with

20   prejudice.

21   **VI.   NEGLIGENT RETENTION, SUPERVISION, TRAINING, AND DISCIPLINE**

22        Plaintiffs assert a claim for negligent retention, supervision, training, and discipline against

23   the LPD and Alldritt, the chief of police.[4]  FAC at ¶¶ 40–44.  California does not have cognizable

24   non-statutory claims against public entities; any tort liability is exclusively statutory.  *Wright v.*

25   *California*, 122 Cal. App. 4th 659, 672 (2004).  Because "the duty of a governmental agency can

26

27   _____

28   [4] A point of clarification: The Lafayette Police Department is not a named defendant in this suit.
     Instead, plaintiffs bring their claims against "Defendant City of Lafayette and its Police
     Department . . . collectively referred to as 'LPD.'"  *See* FAC at ¶ 5.

only be created by statute or enactment, the statute or enactment claimed to establish the duty must at the very least be identified." *Searcy v. Hemet Unified Sch. Dist.*, 177 Cal. App. 3d 792, 802 (1986) (internal quotation marks omitted).

The FAC fails to identify or cite any statute or law violated by defendants to support this cause of action. *See* FAC at ¶¶ 40–44. In their Opposition, plaintiffs clarify that the statutory basis for their claim is California Government Code section 815.2, which imposes liability on public entities for injuries caused by the acts or omissions of their employees if the act or omission would "have given rise to a cause of action against that employee." *See* Oppo. at 17:14–17. This vicarious liability provision offers no basis for this claim of negligent retention, supervision, training, and discipline by the employer: the Lafayette Police Department. *See Fonseca v. City of Fresno*, No. 1:10-CV-00147, 2012 WL 44041, at *16 (E.D. Cal. Jan. 9, 2012) (granting summary judgment on a negligent retention claim where plaintiffs did not identify a direct liability statute).

Moreover, a public entity can only be vicariously liable for an employee's acts or omissions if that employee would have been personally liable for the injury. *See de Villers v. Cty. of San Diego*, 156 Cal. App. 4th 238, 249 (2007); *see also Kendrick v. Cty. of San Diego*, No. 15-CV-2615, 2018 WL 1316618, at *10 (S.D. Cal. March 14, 2018) (applying this rule to a negligent hiring, retention, and supervision claim). Again, plaintiffs cite no statute in the FAC to support liability against Alldritt. *See* FAC at ¶¶ 40–44. Plaintiffs try to correct this in their Opposition by citing California Government Code sections 815.2 and 820, which provides individual tort liability against public employees. *See* Oppo. at 17:19–22.

Further, plaintiffs' claim against Alldritt is conclusory and fails to state any specific facts in support. Plaintiffs allege that these defendants were "negligent and careless in that they retained and entrusted [the officers] to provide police services, even though they knew or should have known that [the officers] were engaged in unconstitutional policing." FAC at ¶ 42. Plaintiffs further allege that Alldritt "negligent failed to adequately train LPD officers to adequately deal with the problem of racial profiling in and by local businesses and/or residents." *Id*. at ¶ 43. This amounts to a "formulaic recitation of the elements of [the] cause of action," without facts supporting the allegation's truth. *See Twombly*, 550 U.S. at 555.

1     For those reasons, plaintiffs' claim is DISMISSED against the LPD and Alldritt without

2  prejudice.

3  **VII.    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

4     To bring a claim of intentional infliction of emotional distress ("IIED"), a plaintiff must

5  show:  (1) extreme and outrageous conduct by the defendant with the intention of causing, or

6  reckless disregard of the probability of causing, emotional distress; (2) that the plaintiff suffered

7  severe or extreme emotional distress; and (3) that the defendant's outrageous conduct actually and

8  proximately caused that emotional distress.  *Corales v. Bennett*, 567 F.3d 554, 571 (9th Cir. 2009).

9  "Outrageous" conduct is that which is "so extreme as to exceed all bounds of that usually tolerated

10  in a civilized community."  *Tekle v. United States*, 511 F.3d 839, 855 (9th Cir. 2007).  A court

11  may decide, as a matter of law, whether a defendant's conduct, as pleaded, could be "deemed

12  'outrageous' within that definition."  *Ricard v. Pacific Indemnity Co.*, 132 Cal. App. 3d 886, 895

13  (1982).

14     The facts plausibly suggest that the officers may have acted with reckless disregard of

15  causing emotional distress.  Defendants dismiss the actions by police as "an effort to conduct a

16  plain-view examination of [p]laintiffs' car" and "an officer's discharge of his or her law

17  enforcement duties."  *See* MTD at 15:26–16:4.  But the alleged actions are a far cry from an

18  officer placing his hand on a cartridge holder or handcuffing a person.  *See id*. at 16:4–8 (citing

19  *Mann v. City of Chula Vista*, No. 18-CV-2525, 2020 WL 5759749, at *11 (S.D. Cal. Sept. 28,

20  2020)).  Swerving around Benton's car, shining a spotlight inside it, and pulling close to the car's

21  back bumper—all at a speed of 65 miles per hour—demonstrates possible reckless disregard of

22  causing emotional distress.  *See* FAC at ¶ 12.  While one of these acts in isolation might not rise to

23  the level of outrageous conduct, taken together, plaintiffs have plausibly pleaded actions that

24  exceed what is tolerated in a civilized society.

25     Defendants do not challenge the second and third elements of plaintiffs' IIED claim.

26  Plaintiffs allege that they were "hurt and injured in their health, strength and activity, sustaining

27  injuries to their nervous system and person," and suffered "severe mental anguish and emotional

28  distress" from the incident.  *Id*. at ¶ 25.  They further allege that the officers' actions caused their

distress.  *Id*.  With no argument to the contrary, I find that the plaintiffs have adequately alleged a claim for IIED.

However, this claim may only proceed against the unnamed officers and the public entity defendants.  The IIED claim cannot proceed against White for the reasons stated above.  Nor have plaintiffs alleged any specific acts by Alldritt relative to this claim.

Generally, the use of "John Doe" to identify a defendant is not favored.  *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  However, in certain circumstances, the identities of alleged defendants will not be known before a complaint is filed.  *Id*.  In such situations, the plaintiff should be given the opportunity through discovery to identify any unknown defendants, "unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds."  *See id*.  I will give plaintiffs the opportunity through discovery to identify the unnamed officers subject to this claim.

Regarding the public entity defendants, plaintiffs have not adequately pleaded that any defendant ratified the misconduct.  *See* FAC at ¶ 47; Oppo. at 19:24-20:6.  Plaintiffs would need to assert facts supporting that ratification occurred, not just assert the conclusory statement that it happened.  *See Williams v. City of Pleasanton*, No. 20-CV-08720-WHO, 2021 WL 3932012, at *3 (N.D. Cal. Sept. 2, 2021) (plaintiff must state "facts plausibly showing who ratified the allegedly unconstitutional acts of officers and how that ratification occurred.").  But the public entity defendants may plausibly be vicariously liable for the officers' actions under California Government Code section 815.2, as plaintiffs allege in their Opposition.  *See* Oppo. at 19:24-28.

Accordingly, plaintiffs' IIED claim may proceed as pleaded against the unnamed officer defendants and the public entity defendants.

## VIII.  NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

There is no "independent tort of negligent infliction of emotional distress" in California.  *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984 (1993).  The tort is negligence; thus this claim is duplicative of plaintiffs' negligence claim.  *Id.*; *see also White v. Soc. Sec. Admin.*, 111 F. Supp. 3d 1041, 1054 (N.D. Cal. 2015) (dismissing plaintiffs' negligent infliction of emotional distress claim as duplicative of their negligence claim).  Plaintiffs' negligent infliction

16

of emotional distress claim is therefore DISMISSED with prejudice.

## IX.   ASSAULT

To prove assault, a plaintiff must show: "(1) that defendant intended to cause harmful or offensive contact, or the imminent apprehension of such contact, and (2) that plaintiff was put in imminent apprehension of such contact." *Brooks v. United States*, 29 F. Supp. 2d 613, 617 (N.D. Cal. 1998). It is a tort of specific intent, meaning plaintiffs must prove that the defendants intended to put them in the reasonable apprehension of harm. *Id*. "[M]erely reckless behavior cannot give rise to an assault cause of action." *Id*.

The plaintiffs again appear to conflate arguments that more appropriately apply to their other claims, rather than assault. For example, plaintiffs reference alleged behavior by police that "shocks the conscience" (substantive due process); infer that the store reported the plaintiffs to police "based solely on their race" (Unruh Act); and argue that police violated their Fourth Amendment rights. *See* Oppo. at 22–23. When the plaintiffs do raise arguments relevant to the assault claim—that defendants "maliciously, and without warrant or legal authority, intended to cause or to place [p]laintiffs in apprehension of harmful or offensive contact"—those assertions are conclusory. *See* FAC at ¶ 52. The FAC alleges no facts indicating the state of mind of White or any of the other officers that would show the requisite intent. *See id*. Alleged reckless behavior does not suffice. *See* Oppo. at 23:21–23 (arguing that the plaintiffs "were reasonable in their belief and imminent apprehension, given the reckless driving of [d]efendant officers, that harmful contact was imminent"). Even if "[p]laintiffs found the physical threats and intimidation to be harmful and offensive to their persons and dignity," that alone is insufficient to adequately plead an assault claim.[5] *See* FAC at ¶ 53.

For these reasons, the assault claim is DISMISSED without prejudice.

## X.   NEGLIGENCE

A negligence claim under California law requires that a plaintiff show: (1) a duty on the part of defendant; (2) breach of that duty; (3) causation and; (4) damages. *Strong v. California*,

---

[5] Plaintiffs also make the same ratification argument discussed *ante* in the IIED section, which fails for the same reasons.

United States District Court
Northern District of California

201 Cal. App. 4th 1439, 1449 (2011).

Plaintiffs allege that defendants had a duty to "protect [p]laintiffs and refrain from harming them," as well as a duty to "refrain from discriminating, harassing and assaulting [p]laintiffs based on the color of their skin." FAC at ¶¶ 56–59. Defendants only take issue with duty, arguing that the FAC "establishes neither discrimination nor harassment," nor "any facts to establish that the patrol vehicles targeted [plaintiffs] based on the color of their skin." *See* MTD at 18:17–19:5.

Courts have imposed a duty to protect on police officers when their conduct "contributes to, increases, or changes the risk which would have otherwise existed." *See Motley v. Smith*, No. 1:15-CV-00905, 2016 WL 3407658, at *12 (E.D. Cal. June 20, 2016) (internal quotation marks and citation omitted); *see also Pierce v. Cty. of Marin*, 291 F. Supp. 3d 982, 1001 (N.D. Cal. 2018) (noting that police may have a duty to act when they "created or increased a peril by affirmative acts"). Plaintiffs have sufficiently pleaded such circumstances here, by alleging the affirmative actions by officers on the highway. *See* FAC at ¶¶ 12–13. The purported facts— swerving around a vehicle and blinding its driver with a spotlight, all while driving at a speed of 65 miles per hour—gives rise to a reasonable inference that the officers created or increased a peril to plaintiffs. Accordingly, I find that plaintiffs have sufficiently pleaded a duty by officers to protect them.

Like the IIED claim, this claim may proceed only against the unnamed officers and public entity defendants, for the same reasons stated above.

## CONCLUSION

For the foregoing reasons, the defendants' motion is GRANTED in part and DENIED in part. The FAC is DISMISSED for all claims except intentional infliction of emotional distress and negligence against the entity defendants and unknown police officers involved in the incident. Plaintiffs are granted leave to amend every cause of action except the Unruh Act and negligent infliction of emotional distress claims, and all of Benton's claims against Contra Costa County,

1    which are dismissed with prejudice.  Any amended complaint is due by December 17, 2021.

2        **IT IS SO ORDERED.**

3    Dated: November 29, 2021



William H. Orrick
United States District Judge

United States District Court
Northern District of California