UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUDREY G., et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>CITY OF LAFAYETTE, et al.,<br><br>    Defendants. | Case No. 21-cv-03545-WHO<br><br>**ORDER DENYING MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Re: Dkt. No. 39 |

  Defendants officer Kevin White, the City of Lafayette, and Contra Costa County (collectively, "the defendants") again seek to dismiss the claims brought by plaintiffs Audrey G., Devin G., Jesse B., and James Larry Benton, Sr., (collectively, "the plaintiffs"). Defendants' motion to dismiss the Third Amended Complaint ("TAC") is DENIED. As I previously held, the plaintiffs have sufficiently pleaded a section 1983 claim arising under the Equal Protection Clause; it is not barred by qualified immunity because the alleged, extreme discriminatory conduct would be obviously unconstitutional. It is clearly established that police officers cannot treat people differently based on their race. Plaintiffs have also adequately alleged a due process-based section 1983 claim under the state-created danger doctrine. The state law claims (violations of the Ralph Act and Bane Act, along with negligence and intentional infliction of emotion distress) may also proceed as pleaded. The defendants' argument that the minor plaintiffs' state law claims against the County and White are barred by the California Government Claims Act is not persuasive; the plaintiffs did not file this suit until after their claims were rejected.

## BACKGROUND

  This case stems from a May 6, 2020, incident that began in Lafayette, California, and continued into Alameda County via Highway 24. TAC [Dkt. No. 38] ¶ 9. The plaintiffs, who are

African American, stopped at a Lafayette store to pick up bait for a fishing trip. *Id*. ¶¶ 3, 10. When they entered the store, a salesperson—described as an "older white lady"—began to follow them. *Id*. ¶ 11. The plaintiffs state that while they were inside the store, "employees misidentified them as four Black male armed robbers and called the Lafayette police." *Id*.

As the plaintiffs left the store, Benton "heard and observed" the salesperson on the phone "describing him and the minor children, his car, the license plate and the direction that he was headed." *Id*. ¶ 12. Benton drove out of the parking lot and two Lafayette police cars began to follow him. *Id.*

Benton then entered Highway 24, where one police car, allegedly driven by officer White, "swerved in front and back of Mr. Benton's car, pulled too close to his rear bumper, flashed a blinding spotlight into the car and persisted in a series of dangerous maneuvers" as Benton drove 65 miles per hour. *Id*. ¶¶ 13, 16. The second police car, allegedly driven by officer Neil Black, "continued to drive closely behind" Benton. *Id*. At one point, the police cars "boxed in" Benton's car between them. *Id*.

Benton was "forced to slow down multiple times, change lanes and did not believe that he was free to drive away from the two police cars who appeared to be pursuing him for some unknown reason." *Id*. ¶ 18. At one point, he "put his hands up at the window and waved to" White in an attempt to get his attention. *Id*. ¶ 17. Benton mouthed, "Do you want me to pull over?" *Id*. White laughed in response. *Id*. White also shined a police spotlight into Benton's vehicle multiple times, blinding Benton and causing him to fear that he would "lose control of the car and injure the children in his care." *Id*. ¶¶ 17-18. But, the plaintiffs allege, the police officers never activated their cars' lights or sirens, nor otherwise direct Benton to pull over. *Id*. ¶ 14.

The TAC alleges that police unlawfully pursued, harassed, and intimidated the plaintiffs based on "inaccurate racial profiling" by store employees. *See id*. ¶ 13. It further contends that the officers "could clearly see that plaintiffs did not fit the description of, and were not four Black males as asserted," yet "persisted in their harassment of plaintiffs." *Id*. ¶ 19.

On or about November 3, 2020, the plaintiffs presented a government tort claim detailing their allegations to the Lafayette Police Department ("LPD") as required by the California

Government Claims Act. *See id*. ¶ 21. The LPD rejected their claims about 10 days later. *See id*. ¶ 22. On or about March 23, 2021, the plaintiffs presented a claim to Contra Costa County. *Id*. ¶ 23. That claim was rejected as untimely on or about April 2. *Id*. ¶ 24. The plaintiffs filed an application to file a late claim, which was granted for the minor plaintiffs only. *Id*. The County then denied the minor plaintiffs' claims on July 13. *Id*.

The plaintiffs filed this suit on May 11, 2021, alleging civil rights violations and other claims against White, the City of Lafayette, and 10 unnamed Doe defendants. Dkt. No. 1. Although Contra Costa County was not a named defendant, the initial complaint stated that the County had rejected the plaintiffs' government tort claims as untimely, that plaintiffs had submitted an application to file a late claim, and that plaintiffs would "amend this complaint to include their claims against Contra Costa County at the appropriate time following the disposition of the government tort claim." *See id*. ¶ 20.

The plaintiffs filed an amended complaint on August 19, 2021. Dkt. No. 8. I dismissed all but their intentional infliction of emotional distress ("IIED") and negligence claims as insufficiently pleaded, and granted leave to amend. *See* Mot. to Dismiss Order ("First MTD Order") [Dkt. No. 24] 1. The plaintiffs filed their Second Amended Complaint ("SAC") soon after, which defendants again moved to dismiss. *See* Dkt. Nos. 25, 30. I dismissed two claims: one for negligent retention, supervision, and training, and one for a section 1983 violation arising under the Fourth Amendment, with leave to amend the latter. *See* Mot. to Dismiss Order ("Second MTD Order") [Dkt. No. 37] 1. The plaintiffs filed their TAC on March 29, 2022, and the defendants moved to dismiss. Dkt. Nos. 38, 39.[1]

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts

---

[1] Pursuant to Civil Local Rule 7-1(b), this motion is suitable for disposition without oral argument.

that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570. In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in her favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## DISCUSSION

The factual allegations in the TAC substantially mirror those in the previous amended complaint. *Compare* TAC *with* Dkt. No. 25. The claims that survived the previous motion to dismiss do so again for the reasons articulated in the Second MDT Order. The plaintiffs have adequately alleged claims against White under section 1983 arising under the Fourteenth Amendment's Equal Protection Clause and the under the Ralph and Bane Acts, and against all defendants for IIED and negligence. I now address the new arguments.

### I.      OFFICER BLACK

The TAC names a new defendant, officer Neil Black. *See* TAC at 1. As of the issuance of this Order, Black has not entered an appearance in this case. Although a summons was issued on May 20, there is no indication from the docket that he has been served. *See* Dkt. No. 46. Nothing in this Order precludes Black from filing his own motion to dismiss, specific to the claims against him, once he is served and enters an appearance.

### II.      THE CALIFORNIA GOVERNMENT CLAIMS ACT

Next, the defendants argue for the first time that the minor plaintiffs' claims against Contra Costa County and officer White are barred by their failure to comply with the California Government Claims Act. *See* Mot. to Dismiss ("MTD") [Dkt. No. 39] 5:4-5. This argument is not persuasive.

4

The Government Claims Act "establishes certain conditions precedent to the filing of a lawsuit against a public entity." *California v. Superior Court*, 32 Cal. 4th 1234, 1237 (2004). "[C]laims against public employees or former public employees for injuries resulting from acts or omissions in the course of their employment must be presented if a claim against the employing entity for the same injury must be presented." *People ex. rel. Harris v. Rizzo*, 214 Cal. App. 4th 921, 939 (2013).

Section 911.2(a) requires the presentation of a claim for injury to a person or property to a public entity no later than six months after the cause of action accrues. Cal. Gov't Code § 911.2(a). Section 945.4 states that

> no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board.

*Id*. § 945.4. The California Supreme Court has held that "under these statutes, failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity." *California*, 32 Cal. 4th at 1239.

The plaintiffs presented their claims to Contra Costa County on March 23, 2021.[2] TAC ¶ 23. The County rejected them for alleged untimeliness on April 2. *Id*. ¶ 24. So far, so good.

The plaintiffs then submitted applications to file a late claim, as permitted under the law. *See id*. ¶ 24; *see also* Cal. Gov't Code § 911.4 ("When a claim that is required by section 911.2 to be presented not later than six months after the accrual of the cause of action is not presented within that time, a written application may be made to the public entity for leave to present that claim."). While that application was pending, the plaintiffs filed this suit on May 11, 2021. *See* Dkt. No. 1 ¶ 20 ("Plaintiffs have submitted a second application to file late claim . . . and will amend this complaint to include their claims against Contra Costa County at the appropriate time following the disposition of the government tort claim."). The minor plaintiffs were granted leave

---

[2] The plaintiffs also presented claims to the City of Lafayette. TAC ¶ 21. They were rejected on November 13, 2020—well before this lawsuit was filed. *See id*. ¶ 22. The defendants do not challenge the plaintiffs' compliance with the Government Claims Act regarding their claims against the City. *See generally* MTD.

to submit a late claim, which the County denied on July 13, 2021. TAC ¶ 24.

The defendants argue that because the plaintiffs filed this suit while their application to file a late claim was pending, they had not exhausted their claims and their causes of action did not accrue. *See* MTD at 5:17-6:2. They rely heavily on a recent case where the California Court of Appeal held that a plaintiff's complaint—filed on the same day as his application to file a late claim—was premature because he did not wait for the public entity to take action on the application, nor did he wait for the statutory time period to expire for it to do so. *See id*. at 6:3-25 (citing *Lowry v. Port San Luis Harbor Dist.*, 56 Cal. App. 5th 211, 219 (2020)). The court concluded that the plaintiff "failed to comply with the [Government Claims] Act because he filed a complaint before his claim was rejected." *Lowry*, 56 Cal. App. 5th at 219. It further held that the plaintiff's noncompliance could not "be cured by amending the complaint to allege he complied," as the lawsuit was "precluded because it was not preceded by a rejection of a claim." *Id*. at 221.

There is a critical distinction between *Lowry* and the case at hand. In *Lowry*, the plaintiff's application for permission to present a late claim was the first time he presented the tort claim to the public entity. *See id*. at 216 ("A proposed claim was attached to the application."). It was rejected 19 days after the lawsuit was filed. *See id*. at 215-16. However, the plaintiffs in this case presented a claim *before* applying to present a late claim. TAC ¶ 24. The initial claim was rejected on April 2, 2021—more than five weeks before this lawsuit was filed. *See id*.

This distinction makes a difference. *Lowry* does not speak to whether a plaintiff's lawsuit is precluded if it was filed *after* a claim was initially rejected but while an application to file a late claim was still pending. Courts interpreting the Government Claims Act treat requests for permission to file a late claim differently than the claims themselves. Indeed, the California Court of Appeal recently articulated the distinction in *Coble v. Ventura Cty. Health Care Agency*, 73 Cal. App. 5th 417, 421 (2021), where it was asked to determine whether a pandemic-related filing extension applied only to the six-month statutory period for presenting a timely claim, or whether it also applied to the one-year period for filing an application for leave to present a late claim. In holding that it only applied to the six-month time period for claim presentation, the court wrote:

> The statutory scheme here clearly distinguishes between a "claim" and an "application." The terms are not synonymous. "Claim," is a word of art. Section 910 sets forth the information that must be included in a claim. . . . Section 911.4, subdivision (a) provides, "When a *claim* that is required by Section 911.2 to be presented not later than six months after the accrual of the cause of action is not presented within that time, a *written application* may be made to the public entity for leave to present that *claim*." "The *application* . . . shall state the reason for the delay in presenting the *claim*. The proposed *claim* shall be attached to the application." Section 912.2 provides, "If an *application* for leave to present a [late] *claim* is granted by the board pursuant to Section 911.6, the *claim* shall be deemed to have been presented to the board upon the day that leave to present the [late] *claim* is granted."

*Coble*, 73 Cal. App. 5th at 426 (citations omitted) (emphasis in original). As another court wrote: "Filing a request for permission to file a late claim does not constitute the actual filing of a claim." *Hill v. City of Clovis*, No. 11-CV-1391, 2012 WL 787609, at *11 (E.D. Cal. Mar. 9, 2012).

Moreover, I agree with Chief Magistrate Judge Joseph Spero's rationale in *Robinson v. Alameda County*, 875 F. Supp. 2d 1029, 1044 (N.D. Cal. June 21, 2021), that amendment could—and in fact did—cure any defect. In *Robinson*, Judge Spero wrote:

> While compliance with the claims statute is mandatory and failure to file a claim is fatal to the cause of action, it does not necessarily result in dismissal. Rather, a plaintiff who fails to comply with the CGCA is merely *subject* to a motion to dismiss. The court has discretion to dismiss with leave to amend to obtain compliance with the CGCA, unless it could not possibly be cured by the allegation of other facts.

875 F. Supp. 2d at 1044 (citing in part *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000)). The issue in *Robinson* was different; there, the plaintiff's complaint did not mention the Government Claims Act whatsoever, let alone plead compliance or a reason for noncompliance. *Id*. at 1044. Judge Spero also ultimately determined that the plaintiff's claim could not be cured by the allegation of other facts. *Id*. at 1046. But the takeaway is this: If the plaintiff could plead other facts showing compliance with the Government Claims Act (or a reason excusing compliance), the court may grant her leave to amend to do so. *See also White v. Sacramento Police Dep't*, No. 21-CV-02211, 2022 WL 2052596, at *2 (E.D. Cal. June 7, 2022) (dismissing state law claims for failure to allege compliance with the Government Claims Act but granting leave to amend because it was "not clear" that the plaintiff "could not possibly cure this defect").

When the plaintiffs filed their SAC on August 19, 2021, they cured any defect by alleging a new fact: that the County denied the minor plaintiffs' late-filed claim on July 13, 2021.  *See* Dkt. No. 8 ¶ 22.  The TAC alleges the same.  *See* TAC ¶ 24.  Based on my reading of the Government Claims Act, the plaintiffs have sufficiently pleaded compliance.  They presented their claims to the County on March 23, 2021.  *Id.* ¶ 23.  The County rejected those claims on April 2, 2021.  *Id.* ¶ 24.  They filed suit on May 11, 2021.  Dkt. No. 1.  Given the statutory requirements, the distinction between a claim and an application to file a late claim, and the lack of authority suggesting otherwise, the minor plaintiffs' state law claims may proceed.

### III.     THE EQUAL PROTECTION CLAIM

The next issue is whether the plaintiffs' Equal Protection claim, which provides a basis for their section 1983 claim, is barred by qualified immunity.  Police officers are not shielded by qualified immunity if "(1) the facts taken in the light most favorable to the party asserting the injury show that the officers' conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged violation."  *Thompson v. Rahr*, 885 F.3d 582, 586 (9th Cir. 2018) (citation and modifications omitted).

A claim brought under the Fourteenth Amendment's Equal Protection Clause must assert that the plaintiff was intentionally treated differently than other similarly situated individuals.  *Recinto v. U.S. Dep't of Veterans Affs.*, 706 F.3d 1171, 1177 (9th Cir. 2013).  The plaintiff must show that "the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).  Purposeful discrimination arises when the decisionmaker acts "because of, not merely in spite of, the action's adverse effects upon an identifiable group."  *See Iqbal*, 556 U.S. at 676-77 (citation and modifications omitted).

I previously held that the plaintiffs had sufficiently stated a section 1983 claim arising under the Equal Protection Clause.  *See* Second MTD Order at 10:21-11:2.  The same is true of the TAC.  The plaintiffs allege not only that the officers drove at dangerously high speeds to harass plaintiffs but that the officers could "clearly see" that they did not fit the description provided by the store.  TAC ¶ 19.  Given the other allegations—namely, that White repeatedly shined a light

into the vehicle bright enough to blind Benton—this is a reasonable inference. *See id.* ¶¶ 16-18. Yet, according to the TAC, the officers "persisted in their harassment of plaintiffs" and did so "based solely upon their race." *Id.* ¶ 19. This is enough for the claim to proceed.

Because the plaintiffs adequately alleged that officer White violated their Fourteenth Amendment right to equal protection under the law, the first step is satisfied. The question is whether that right was "clearly established" at the time it was violated.

The Supreme Court has "repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Although a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). The dispositive question is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

The plaintiffs do not, as the defendants contend, need to identify case law holding that police violate the Equal Protection Clause "when, in response to the call describing a suspect vehicle, they drive in close proximity to that vehicle or illuminate it using a spotlight" or when a person "asks if he should pull over and the officer only laughs in response." MTD at 10:7-11. The Ninth Circuit has held that "because the non-discrimination principle is so clear," it is "especially true in equal protection cases" that a prior case with materially similar facts is not needed to show that the right to be free from discrimination is clearly established. *Elliot-Park v. Manglona*, 592 F.3d 1003, 1008-09 (9th Cir. 2010). *Elliot-Park* focused on "non-discriminatory administration of protective services" by police, holding that because it was "long established that state employees can't treat individuals differently on the basis of their race," officers had "a more than fair warning" that their failure to investigate and arrest a suspected drunk driver because of race violated the Equal Protection Clause. *See id.* at 1008-09. The court also discussed equal protection violations by police more broadly, writing that "[i]t hardly passes the straight-face test to argue at this point in our history that police could reasonably believe they could treat individuals disparately based on their race." *See id.* at 1008.

The plaintiffs allege that officer White treated them differently because of their race, as

indicated by his swerving around Benton's vehicle, pulling close to its bumper, and boxing Benton in at high speeds after determining that he and the minor plaintiffs did not match the description provided by the store. *See* TAC ¶¶ 15-19. As in *Elliot-Park*, they do not need a case with materially similar facts to show that it was clearly established that White could not discriminate against them on the basis of race. Police officers have long been on notice that they cannot do so. Taking the allegations in the TAC as true, qualified immunity does not bar the plaintiffs' section 1983 claim based on the Equal Protection Clause.

## IV.     THE SUBSTANTIVE DUE PROCESS CLAIM

The plaintiffs now assert a section 1983 claim against officers White and Black arising under the Due Process Clause. *See id.* ¶¶ 31-33 (alleging that the officers violated the plaintiffs' "Fourteenth Amendment rights to due process and equal protection of the laws"). The defendants argue that this claim is improper, as the plaintiffs did not invoke due process in the SAC and my Order on that motion to dismiss "did not state that plaintiffs were authorized to raise new claims." MTD at 10:17-20.

The rules regarding amendment are generous. Federal Rule of Civil Procedure 15(a)(2) directs courts to "freely give leave [to amend] when justice so requires." The Ninth Circuit construes this rule broadly, stating that it should be applied "with extreme liberality." *See, e.g., Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Although the plaintiffs did not seek leave to amend to add a due process-based section 1983 claim, I would have granted such a request. Dismissing such a claim now would elevate form over substance, wasting time and resources litigating motions for leave to amend and then to dismiss.

The real question is whether the plaintiffs have sufficiently stated a substantive due process claim. The threshold step in asserting a substantive due process violation is to show that the plaintiff was "deprived of a 'constitutionally protected life, liberty or property interest.'" *Hotop v. City of San Jose*, 982 F.3d 710, 718 (9th Cir. 2020) (citing cases). The Supreme Court has stated that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'"

*Albright v. Oliver*, 510 U.S. 266, 273 (1994) (Rehnquist, C.J., plurality) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

To the extent that the plaintiffs base their claim on a seizure by police (which I held was properly pleaded in the SAC, but felled by qualified immunity), it is covered by the Fourth Amendment. *See* Second MTD Order at 7:17-28, 9:8-16; *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (holding that substantive due process analysis was appropriate because no seizure occurred and thus, the claim was not "covered by" the Fourth Amendment). The same would be true if the plaintiffs alleged a due process violation based on an excessive use of force. *See Godoy v. Cty. of Sonoma*, No. 15-CV-00883-WHO, 2016 WL 269867, at *4 n.4 (N.D. Cal. Jan. 22, 2016) ("To the extent plaintiffs' alleged Fourteenth Amendment violations are based on the officers' use of excessive force, they must be analyzed under the Fourth Amendment standard.").

However, "[i]t is well established that the Constitution protects a citizen's liberty interest in her own bodily security." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006). The Ninth Circuit recognizes substantive due process claims arising from a "state-created danger"—"that is, where state action creates or exposes an individual to a danger which he or she would not have otherwise faced." *See id.* (citations omitted). To prove such a danger, a plaintiff must establish three elements:

> First, she must show that the officers' affirmative actions created or exposed to her an actual, particularized danger that she would not otherwise have faced. Second, she must show that the injury she suffered was foreseeable. Third, she must show that the officers were deliberately indifferent to the known danger.

*Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019).

All three elements are found within the TAC. It describes a series of affirmative acts by the officers—including swerving in front and back of Benton's car, pulling too close to its rear bumper, boxing it in, and flashing a bright light inside, all at a speed of 65 miles per hour—that created an actual, particularized danger that the plaintiffs otherwise would not have faced. *See, e.g.,* TAC ¶¶ 16-18. The injuries alleged—including "severe mental anguish and emotional distress, anxiety, [and] worry"—were a foreseeable result of that conduct, particularly when, as

alleged, police had no reason to continue these actions. *See id.* ¶¶ 14 (alleging that police never activated their cars' lights or sirens, or directed Benton to pull over), 28-29 (describing injuries). Finally, the TAC expressly alleges that the officers acted with deliberate indifference to the known danger. *See, e.g., id.* ¶¶ 6-7, 33. This is also supported by specific facts alleged—for example, that White laughed at Benton when Benton asked if he should pull over. *See id.* ¶ 17. The plaintiffs have sufficiently stated a substantive due process under the state-created danger doctrine.

Qualified immunity does not bar the claim at this point. For more than three decades, state actors within the Ninth Circuit have been on notice that they may violate the Due Process Clause by affirmatively placing a person in danger that she otherwise would not have faced. *See, e.g., Wood v. Ostrander*, 879 F.2d 583, 589-90 (9th Cir. 1989); *Kennedy*, 439 F.3d at 1067. Specifically, police officers have been aware that this doctrine applies to their actions—*Wood* and *Kennedy* are but two examples of cases where courts have recognized a state-created danger in the context of policing. A case with identical facts is not required, as the preexisting law gave the officers fair warning that their conduct was unlawful. *See Kennedy*, 439 F.3d at 1065-66 (holding that a police officer was not entitled to qualified immunity, even without an identical case, because it was "beyond dispute" that at the time of the alleged actions, "it was clearly established that state officials could be held liable where they affirmatively and with deliberate indifference placed an individual in danger she would not otherwise have faced").

To the extent that the plaintiffs assert a section 1983 claim based on the Due Process Clause, it may proceed.

## V.    NEW CLAIMS

Next, the TAC appears to assert new claims against new defendants. The SAC alleged claims under the Ralph and Bane Acts by "plaintiffs against defendant White," and the IIED and negligence claims by "plaintiffs against all defendants." *See* SAC [Dkt. No. 25] 8-11. The TAC, however, asserts these four claims by "minor plaintiffs against all defendants." *See* TAC at 8-11. It then asserts a Ralph Act claim by Benton against White, Black, and the City of Lafayette; and Bane Act, IIED, and negligence claims by Benton against the City. *See id.* at 12-13.

The plaintiffs' Ralph and Bane Act claims may proceed only against White, as alleged in

the TAC; the plaintiffs cannot bring in the municipal entity defendants at this stage. Benton may assert claims only against White and the City; I previously determined that his claims against Contra Costa County were barred by the statute of limitations. *See* First MTD Order at 9:23-10:11. The TAC does not appear to assert new claims by Benton against White and the City, as feared by defendants. Instead, it inartfully attempts to reflect my prior decision. If good cause is discovered in the future to assert new claims, the plaintiffs may seek leave to amend.

## VI.     THE CITY AS A DEFENDANT

Finally, the defendants again seek the dismissal of the City of Lafayette, arguing that the plaintiffs pleaded no facts showing that the officers were employed by the City; defendants assert that they worked for Contra Costa County. MTD at 4:6-19. That may well be true, but the plaintiffs do not have to accept the City's word for it. For now, the TAC plausibly pleads the existence of an employment relationship between the officers and the City. It alleges that White "is a peace officer employed by either LPD and/or Contra Costa County." TAC ¶ 6. It asserts the same about officer Black. *Id*. ¶ 7. It further alleges that the City of Lafayette "stands in a contractual relationship with Contra Costa County for police services." *Id*. ¶ 8. Once the precise nature of the relationship between the defendants is clear, I expect to see either voluntary dismissal of the City or a motion for summary judgment by the City. *See* Second MTD Order at 15:27-16:1.

## CONCLUSION

The defendants' motion to dismiss is DENIED.

**IT IS SO ORDERED.**

Dated: July 7, 2022

William H. Orrick
United States District Judge