1

2

3                      UNITED STATES DISTRICT COURT

4                     NORTHERN DISTRICT OF CALIFORNIA

5

6    AUDREY G., et al.,                    Case No.  21-cv-03545-WHO

7                  Plaintiffs,
                                           **ORDER GRANTING MOTION TO**
8          v.                              **DISMISS**

9    CITY OF LAFAYETTE, et al.,            Re: Dkt. No. 63

10                 Defendants.

11

12         Defendant Neil Black moves to dismiss a Third Amendment Complaint ("TAC") filed by

13   plaintiffs Audrey G., Devin. G., Jesse B., and James Larry Benton (collectively, "the plaintiffs"),

14   alleging civil rights violations and other unlawful acts by Black and another police officer as they

15   drove on a highway.  Black's motion is GRANTED: the plaintiffs have not adequately stated

16   section 1983 or state law claims against him.  The TAC does not allege the same behavior by

17   Black that was key in allowing the claims to proceed against the other defendants in this case.  I

18   will grant the plaintiffs leave to amend the claims asserted against Black, as this is the first time

19   that he has challenged them in this suit and because other allegations may cure these deficiencies.

20                                   **BACKGROUND**

21         This case arises from a May 6, 2020, incident that began in Lafayette, California, and

22   continued into Alameda County via Highway 24.  TAC [Dkt. No. 38] ¶ 9.  The plaintiffs, who are

23   African American, had stopped at a Lafayette store, where a salesperson began to follow them.  *Id.*

24   ¶¶ 3, 10-11.  The plaintiffs allege that "employees misidentified them as four black male armed

25   robbers and called the Lafayette police."  *Id.* ¶ 11.

26         As the plaintiffs left the store, Benton "heard and observed" the salesperson on the phone

27   "describing him and the minor children, his car, the license plate and the direction that he was

28   headed."  *Id.* ¶ 12.  Lafayette police cars followed Benton after he drove out of the parking lot and

United States District Court
Northern District of California

United States District Court
Northern District of California

1    onto Highway 24.  *Id*. ¶¶ 12, 13.

2         On the highway, one police car, allegedly driven by officer Kevin White, "swerved in front

3    and back of Mr. Benton's car, pulled too close to his rear bumper, flashed a blinding spotlight into

4    the car and persisted in a series of dangerous maneuvers" as Benton drove 65 miles per hour.  *Id*. ¶

5    16.  The second police car, allegedly driven by officer Black, "continued to drive closely behind"

6    Benton.  *Id*.  At one point, the police cars "boxed in" Benton's car between them.  *Id*.

7         Benton was "forced to slow down multiple times, change lanes and did not believe that he

8    was free to drive away from the two police cars who appeared to be pursuing him for some

9    unknown reason."  *Id*. ¶ 18.  At one point, he "put his hands up at the window and waved to"

10   White, then mouthed, "Do you want me to pull over?"  *Id*. ¶ 17.  White laughed.  *Id*.  He also

11   shined the light into Benton's car multiple times, blinding him and causing him to fear that he

12   would "lose control of the car and injure the children in his care."  *Id*. ¶¶ 17-18.  The officers

13   never activated their cars' lights or sirens, nor otherwise direct Benton to pull over.  *Id*. ¶ 14.

14        The TAC alleges that police unlawfully pursued, harassed, and intimidated the plaintiffs

15   based on "inaccurate racial profiling" by store employees.  *See id*. ¶ 13.  It further contends that

16   the officers "could clearly see that plaintiffs did not fit the description of, and were not four black

17   males as asserted," yet "persisted in their harassment of plaintiffs."  *Id*. ¶ 19.

18        On or about November 3, 2020, the plaintiffs presented a government tort claim to the

19   Lafayette Police Department ("LPD"), which rejected the claim about 10 days later.  *See id*. ¶¶ 21-

20   22.  On or about March 23, 2021, the plaintiffs presented a claim to Contra Costa County ("the

21   County"), which rejected the claim as untimely on or about April 2.  *Id*. ¶¶ 23-24.  The plaintiffs

22   filed an application to file a late claim, which was granted for the minor plaintiffs only.  *Id*. ¶ 24.

23   The County denied the minor plaintiffs' claims on July 13, 2021.  *Id*.

24        The plaintiffs filed this suit on May 11, 2021, alleging civil rights violations and other

25   claims against White, the City of Lafayette ("the City"), and 10 unnamed Doe defendants.  Dkt.

26   No. 1.  They filed an amended complaint on August 19, 2021, adding a negligence claim and the

27   County and police chief Ben Alldritt as defendants.  Dkt. No. 8.  I dismissed all but the intentional

28   infliction of emotional distress ("IIED") and negligence claim, and granted leave to amend.  Mot.

to Dismiss Order ("First MTD Order") [Dkt. No. 24] 1.

The plaintiffs filed a Second Amended Complaint ("SAC") on December 17, 2021, naming the City, County, and White as defendants. Dkt. No. 25. I dismissed two claims: one for negligent retention, supervision, and training, and one for a section 1983 violation arising under the Fourth Amendment. Mot. to Dismiss Order ("Second MTD Order") [Dkt. No. 37] 1.

The plaintiffs filed the TAC on March 29, 2022, which named Black as a defendant for the first time. Dkt. No. 38. When I denied a motion to dismiss brought by the City, County, and White, I noted that Black had not yet entered an appearance in the case and there was no indication from the docket that he had been served. *See* Mot. to Dismiss Order ("Third MTD Order") [Dkt. No. 53] 4:19-23. I held that nothing in that Order precluded Black from filing his own motion to dismiss the claims against him once he was served and appeared. *Id.* His motion is suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts her allegations as true and draws all reasonable inferences in her favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to

1   amend the pleading was made, unless it determines that the pleading could not possibly be cured

2   by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

3                                          **DISCUSSION**

4   **I.      SERVICE**

5          Black first argues that the claims against him are time-barred under Federal Rule of Civil

6   Procedure 4(m).  Mot. to Dismiss ("MTD") [Dkt. No. 63] 14:4-20.  Rule 4(m) states that if a

7   defendant is not served within 90 days after the complaint is filed, "the court—on motion or on its

8   own after notice to the plaintiff—must dismiss the action without prejudice against that defendant

9   or order that service be made within a specified time."  Fed. R. Civ. P. 4(m).  However, "if the

10  plaintiff shows good cause for the failure, the court must extend the time for service for an

11  appropriate period."  *Id.*  Courts have "broad discretion to extend time for service under Rule

12  4(m)," and may consider factors such as "a statute of limitations bar, prejudice to the defendant,

13  actual notice of a lawsuit, and eventual service" in deciding whether to do so.  *Efaw v. Williams*,

14  473 F.3d 1038, 1041 (9th Cir. 2007) (citations and quotation marks omitted).

15         The TAC, which first named Black as a defendant, was filed on March 29, 2022.  Dkt. No.

16  38.  On April 21, the plaintiffs' counsel emailed the Contra Costa County attorney representing the

17  other defendants (the City, County, and White) and asked if he would accept service of the

18  summons and complaint on Black's behalf.  Oppo. [Dkt. No. 78] 8:9-12 (citing Price Decl. [Dkt.

19  No. 79] Ex. C).  On April 29, the County attorney confirmed that he could.  *Id.*  Although the

20  summons was issued on May 20, the plaintiffs did not serve Black via email to the city attorney

21  until August 3, 2022—127 days after the TAC was filed.  Dkt. No. 46; MTD at 14:5-9.  The

22  plaintiffs argue that service was delayed because mediation between the parties was being

23  rescheduled, my decision on the other defendants' motion to dismiss was pending, and thereafter,

24  both of the plaintiffs' attorneys had COVID.  *See* Oppo. at 8:7-19.

25         The plaintiffs should have served Black timely.  That said, he is served now and has not

26  argued that he was prejudiced by the delay.  His motion to dismiss shows that he has had a

27  meaningful opportunity to challenge the plaintiffs' claims.  It is also likely that Black has known

28  about this lawsuit since close to its inception, given the detailed factual allegations in the original

United States District Court
Northern District of California

complaint, including the date and location of the alleged incident, the policy agency involved, the last name and badge number of one of the officers, and allegations that a second officer was involved. *See* Compl. [Dkt. No. 1] ¶¶ 6, 8-11. This cuts against dismissing the claims for failure to timely serve and instead, extending the time for service. *See Efaw*, 473 F.3d at 1041. Given the lack of prejudice, I will extend the time for service and evaluate this matter on the merits.

## II.   SECTION 1983 CLAIM

Section 1983 provides a cause of action "for violations of the federal Constitution and laws." *Sweaney v. Ada Cty.*, 119 F.3d 1385, 1391 (9th Cir. 1997) (quotation marks omitted). It is not a standalone source of rights; rather, section 1983 serves as a "method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). The plaintiffs base their section 1983 claim against Black on alleged violations of their Fourteenth Amendment due process and equal protection rights. *See* TAC ¶ 32.

### a.   Equal Protection

A claim brought under the Fourteenth Amendment's Equal Protection Clause must state that the plaintiff was intentionally treated differently than other similarly situated individuals. *Recinto v. U.S. Dep't of Veterans Affs.*, 706 F.3d 1171, 1177 (9th Cir. 2013). The plaintiff must show that the defendants "acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Purposeful discrimination occurs when the defendant acts "because of, not merely in spite of, the action's adverse effects upon an identifiable group." *See Iqbal*, 556 U.S. at 676-77 (citation and internal modifications omitted).

Black argues that the plaintiffs fail to state an equal protection claim against him because the TAC does not establish that he "saw them in their car and was therefore personally aware of their races or other characteristics." MTD at 4:7-9. He notes that the TAC alleges that Black drove behind the plaintiffs' car, and does not allege that he shined the spotlight inside, "made any comments or gestures towards them," or otherwise contacted them. *Id.* at 4:7-9, 4:20-22.

In response, the plaintiffs largely rely on my second Order on the other defendants' motion to dismiss, where I allowed the equal protection-based section 1983 claim against White to

proceed. *See* Oppo. at 2:25-3:12. They note that I held that it was "reasonable to infer that police could see that the plaintiffs were not four black males, and that their continued erratic driving reflected an intent to discriminate the plaintiffs based on their race"—which was enough for the claim to survive the motion to dismiss. *Id*. (citing Second MTD Order at 10:26-11:2). According to the plaintiffs, Black "appear[s] to ignore" my prior ruling and the TAC, which alleges that "[t]he officers could clearly see that plaintiffs did not fit the description of, and were not four black males as asserted by the retail store employees," yet "persisted in their harassment of plaintiffs." *Id*. (citing TAC ¶ 19).

But there is a critical distinction between the allegations against officer White and those against officer Black. The TAC alleges that White "flashed a blinding spotlight" into the plaintiffs' car multiple times and that at one point, Benton slowed down, "put his hands up at the window," "waved to defendant White to get his attention and mouthed, 'Do you want me to pull over?" TAC ¶¶ 16-17. The TAC further alleges that White laughed in response. *Id*. ¶ 17.

The TAC is void of such allegations against officer Black. It alleges that he drove "closely behind" Benton, and that at one point, Benton's vehicle was "boxed in" between the two police cars. *Id*. But it does not allege that Black shined a light into the plaintiffs' vehicle or otherwise engaged with them in a manner where it is reasonable to infer that he could see that the plaintiffs did not match the description provided by the store. Those details made the equal protection claim plausible as alleged against White. Accepting the plaintiffs' allegations as true, it was reasonable to infer—based on the spotlight, White's close proximity to the plaintiffs' car, and his communication with Benton—that White could tell that the plaintiffs were not four black males, and that his continued actions reflected an intent to discriminate against them based on their race. The same is not true for Black.

Without additional supporting details, the allegations that Black intentionally discriminated against the plaintiffs based on their race are too conclusory to proceed. The plaintiffs have not adequately pleaded a section 1983 claim against Black based on the Equal Protection Clause.

### b. Due Process

To state a substantive due process claim, a plaintiff must show that he was "deprived of a

'constitutionally protected life, liberty or property interest.'" *Hotop v. City of San Jose*, 982 F.3d 710, 718 (9th Cir. 2020) (citing cases). The plaintiff must also show that the defendant did this in a manner "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998).

Black argues that the plaintiffs' claim against him fails because they did not articulate a "cognizable constitutional right," instead "proclaiming in a circular fashion the violation of the 'Fourteenth Amendment rights to due process and equal protection of the laws.'" *See* MTD at 6:2-5 (citing in part TAC ¶ 32). And, he argues, the plaintiffs have not shown that he "engaged in the type of conscience-shocking, egregious, intentional misconduct required to implicate the Due Process Clause"; rather, they allege that Black responded to a report of armed robbers, "drove closely behind plaintiffs' car," and that "at one point plaintiffs' car was between the vehicles driven by officer White and officer Black." *Id*. at 6:9-15.

The plaintiffs gloss over the first point and focus only on whether Black's actions shocked the conscience. *See* Oppo. at 3:22-6:12. They compare the incident to a high-speed police chase, specifically that in *Checki v. Webb*, 785 F.2d 534, 538 (5th Cir. 1986), where the Fifth Circuit held that "where a police officer uses a police vehicle to terrorize a civilian, and he has done so with malicious abuse of official power shocking to the conscience, a court may conclude that the officers have crossed the 'constitutional line.'" *See id.* Although *Checki* did not directly address the validity of a substantive due process claim—the issues involved tolling and venue—the case arose from a 100-plus mile-per-hour chase during which state troopers in an unmarked police vehicle tailgated the plaintiff's vehicle within two or three feet. *See* 785 F.2d at 535-36. The plaintiffs argue that "[t]he conduct which occurred here is significantly more egregious than the actions of the officers described in the *Checki* case." Oppo. at 5:4-5. According to the plaintiffs, the facts alleged in the TAC—"including the high rate of speed at which the harassment occurred, the dangerous and repeated interference with Mr. Benton's visibility while driving at a high rate of speed, and the obviousness of the danger in moving too close to his vehicle and 'boxing him in' on the freeway"—"exceed what is tolerated in a civilized society." *Id*. at 5:4-23.

But again the plaintiffs focus on the alleged acts by officer White, not officer Black. In

7

support of their argument, they point to the allegations that "as the police vehicles swerved in front, back, and alongside his vehicle, shining a blinding light inside the car, Mr. Benton was forced to change lanes, slow down and try to avoid a collision." *Id.* at 5:4-7 (citing in part TAC ¶¶ 16-18). They also reference the allegations that Benton tried to communicate with White, but that White "laughed at him and continued to harass and terrorize the plaintiffs without a reasonable response." *Id.* at 5:7-10 (citing in part TAC ¶ 17).

The same facts are not alleged against Black. The TAC alleges that he drove "closely" behind Benton, that he "boxed in" Benton's car, and that this occurred while Benton was driving at 65 miles per hour. TAC ¶ 16. But the most egregious, conscience-shocking acts—swerving in front and back of Benton's car, repeatedly shining the spotlight inside it, persisting in a "series of dangerous maneuvers," and laughing when Benton asked if he should pull over—were purportedly committed by White, not Black. *See id.* ¶¶ 16-17. Black might have driven too closely to Benton's car on the freeway. But that alone does not rise to conscious-shocking behavior.

Nor do the allegations against Black support a due process claim under the state-created danger doctrine.[1] In my previous Order, I noted the allegations—including swerving in front and back of Benton's car, pulling too close to his rear bumper, flashing a bright light inside, and laughing at Benton when he asked if he should pull over—that supported this theory of liability. *See* Third MTD Order at 11:23-12:6. Again, those allegations are specific to White, not Black.

The differing allegations between White and Black are crucial. The plaintiffs have not sufficiently alleged a substantive due process violation against Black to base their section 1983 claim upon. Accordingly, the section 1983 claim is DISMISSED.

## III.    STATE LAW CLAIMS

### a.  Statute of Limitations

Under the California Government Claims Act, a claimant has six months after the notice of rejection of his claim is mailed or delivered to bring a lawsuit challenging the underlying acts.

---

[1] In a footnote in Black's motion to dismiss, the defendants (not just Black) urge me to reconsider my decision allowing the due process claim to proceed under the state-created danger doctrine. *See* MTD at 6 n.2. This is not the proper vehicle for the defendants to seek reconsideration. *See* Civil Local Rule 7-9.

Cal. Gov't Code § 945.6(a)(1).  Black notes that the plaintiffs did not file the TAC until March 29, 2022—more than six months after the City rejected the plaintiffs' administrative claims on November 13, 2020, and the County did the same for the minor plaintiffs' late-filed claim on July 13, 2021.  *See* MTD at 9:2-5; *see also* TAC ¶¶ 21-22, 24.  He also argues that the relation-back doctrine does not apply, either as it is articulated under the Federal Rules of Civil Procedure or California law.  *See* MTD at 9:6-10:14.  As a result, he contends, the plaintiffs' state law claims against him should be dismissed with prejudice.  *Id*. at 10:15-16.

Federal Rule of Civil Procedure 15(c)(1) allows an amendment to a pleading to "relate back" to the date of the original pleading under certain circumstances.  The first occurs when "the law that provides the applicable statute of limitations allows relation back."  Fed. R. Civ. P. 15(c)(1)(A).  Second is when the amendment "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).  Finally, an amendment relates back when it

> changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C).  So, for an amended complaint to relate back under Rule 15(c)(1)(c):

> (1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; [and] (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it.

*Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1202 (9th Cir. 2014) (citation omitted). "Additionally, the second and third requirements must have been fulfilled within 120 days after the original complaint is filed, as prescribed by" Rule 4(m).  *See id*. (citations omitted).

In *Butler*, the Ninth Circuit held that "Rule 15(c)(1) incorporates the relation back rules of the law of a state when that state's law provides the applicable statute of limitations and is more lenient."  *Id*. at 1200.  "As a result," the court wrote, "if an amendment relates back under the state

1  law that provides the applicable statute of limitations, that amendment relates back under Rule

2  15(c)(1) even if the amendment would not otherwise relate back under the federal rules." *Id*.

3  (citation omitted).

4       California law provides the applicable statute of limitations period.  Black challenges only

5  the state law claims as barred by the statute of limitations, not the plaintiffs' section 1983 claim.[2]

6  *See* Reply [Dkt. No. 81] 6 n.3.  As in *Butler*, where California law also provided the limitations

7  period, Rule 15(c)(1) requires me to "consider both federal and state law and employ whichever

8  affords the 'more permissive' relation back standard."  766 F.3d at 1201.

9       District courts in California that have considered amendments involving Doe defendants

10  have held that California's relation-back standard is more lenient and therefore governs.  *See, e.g.,*

11  *Doe v. Cty. of Los Angeles*, No. 20-CV-02748, 2021 WL 5396093, at *3-4 (C.D. Cal. Nov. 18,

12  2021);  *Sandoval v. Budget Rent A Car*, No. LACV-20-07069, 2020 WL 6588738, at *3-4 (C.D.

13  Cal. Sept. 3, 2020); *Klamut v. Cal. Highway Patrol*, No. 15-CV-02132-MEJ, 2015 WL 9024479,

14  at *4-5 (N.D. Cal. Dec. 16, 2015).  I agree.  Although the general rule under California law is that

15  "an amended complaint that adds a new defendant does not relate back to the date of filing the

16  original complaint," California Civil Procedure Code section 474 allows the substitution of a

17  named defendant for a "fictitious Doe defendant named in the original complaint as to whom a

18  cause of action was stated in the original complaint."  *Woo v. Superior Court*, 75 Cal. App. 4th

19  169, 176 (1999); *see also Hawkins v. Pac. Coast Bldg. Prods., Inc.*, 124 Cal. App. 4th 1497, 1503-

20  04 (2004) (noting that amendment is allowed when it "does not add a 'new' defendant, but simply

21  corrects a misnomer by which an 'old' defendant was sued").  California's relation-back law is

22  more permissive than Rule 15(c), in part because the latter does not expressly allow a plaintiff to

23  amend his complaint to name a defendant previously identified by a fictitious name.  *See* Fed. R.

24  Civ. P. 15(c).

25       Black's basic argument against allowing the plaintiffs' state law claims to relate back

26

27  ────────────────

28  [2] Even if Black did challenge the section 1983 claim on statute of limitations grounds, California
law would apply.  *See Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009) ("State law governs
the statute of limitations period for § 1983 suits and closely related questions of tolling.").

United States District Court
Northern District of California

under California law is this: Although the plaintiffs named Doe defendants in their original and first amended complaints, the SAC removed the Doe defendants.  MTD at 9:26-10:6.  Black contends that because the SAC superseded the prior complaints, "there were therefore no fictious defendants for the TAC to relate back to under section 474."  *Id*. at 10:6-7.  In support, he cites two cases from the California Court of Appeal and Central District of California.  *See id*. at 10:5-14; *see also Fireman's Fund Ins. Co. v. Sparks Constr., Inc.*, 114 Cal. App. 4th 1135, 1143-44 (2004) ("Filing Doe amendments when the operative complaint contained no Doe allegations did not comply with Code of Civil Procedure section 474."); *Ibrahim v. Fiat Chrysler Autos.*, No. CV-19-10744, 2020 WL 7862122, at *5 (C.D. Cal. Nov. 19, 2020) ("Because there is no mention of Doe defendants in the FAC, plaintiffs waived their claims in the original complaint against the Doe defendants.  Therefore, plaintiffs' relation-back argument fails.") (citations omitted).

The plaintiffs do not counter with any case law or other authority.  *See* Oppo. at 7:8-8:22.  Indeed, they do not address Black's arguments about the relation-back doctrine under California law, addressing only its application under Federal Rule 15(c)(1).  *See id.*  This is a problematic oversight, as any failure to relate back under the federal rules does not alone determine the statute of limitations issue.  *See Butler*, 766 F.3d at 1200 ("if an amendment relates back under the state law that provides the applicable statute of limitations, that amendment relates back under Rule 15(c)(1) even if the amendment would not otherwise relate back under the federal rules").

Even if the federal relation-back standard governed, the plaintiffs have not shown that the amendment satisfies the requirements of Rule 15(c)(1)(C).  First, they have not shown that Black received notice so that he would not be prejudiced in maintaining his defense within 120 days of the original complaint's filing.  *See Butler*, 766 F.3d at 1202.  Second, they have not adequately responded to Black's argument that "replacing a fictious 'Doe' defendant with a named defendant is not a 'mistake' that permits relation back under Rule 15(c)."  *See* MTD at 9:13-18.

However, I need not decide this issue now.  As explained below, I am dismissing the state law claims under Rule 12(b)(6).  As this is the plaintiffs' first opportunity to test their claims against Black, I will grant them leave to amend.  If the plaintiffs do so, they should squarely address the statute of limitations issue, specifically the relation-back doctrine as applied under

11

1   California law.

2       **b.   Ralph Act**

3       The Ralph Civil Rights Act of 1976 provides all people in California with "the right to be

4   free from any violence, or intimidation by threat of violence, committed against their persons or

5   property because of" a protected characteristic, including race.  Cal. Civ. Code § 51.7(b)(1); §

6   51(b).  A plaintiff alleging a Ralph Act violation must show: "(1) the defendant threatened or

7   committed violent acts against the plaintiff; (2) the defendant was motivated by his perception of

8   plaintiff's race; (3) the plaintiff was harmed; and (4) the defendant's conduct was a substantial

9   factor in causing the plaintiff's harm."  *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1167

10  (N.D. Cal. 2009) *amended in part* (Sept. 8, 2009).

11      Black argues that the plaintiffs have not plausibly alleged that he "expressed the intent to

12  inflict violence upon them or engaged in an act of violence against them" or that he did so because

13  of any racial animus.  MTD at 10:25-11:7.  He notes that the TAC does not allege that he "made

14  any statements or gestures towards them, or did anything more than drive behind them."  *Id*.  The

15  plaintiffs respond that the officers' conduct "shocks the conscience in that plaintiffs were seized

16  by defendant officers in a high speed game of chicken on the freeway at 65 miles per hour," and

17  that police only confronted them because the store employees racially profiled them.  Oppo. at

18  8:25-9:3.

19      Again, the different allegations against officers Black and White are crucial.  In allowing

20  the Ralph Act claim to proceed against White, I held that the plaintiffs had plausibly shown that

21  his alleged actions, "considered collectively," expressed an intent to injure or damage the plaintiffs

22  or their property.  Second MTD Order at 11:16-19 (citing *Ramirez v. Wong*, 188 Cal. App. 4th

23  1480, 1486 (2010) ("There can be no 'threat of violence' without some expression of intent to

24  injure or damage plaintiffs or their property.")).  I focused on the allegations that White swerved

25  around the plaintiffs' car, boxed it in, and forced it to change lanes and slow down—a "dangerous

26  use of a police vehicle" that plausibly expressed the requisite intent and constituted a threat of

27  violence against the plaintiffs.  *Id*. at 11:19-12:3.  I further held that the plaintiffs had shown that

28  White's actions were motivated by his perception of their race, in part by alleging that he

United States District Court
Northern District of California

12

United States District Court
Northern District of California

1    continued to follow and harass them "even after seeing that they did not fit the suspect

2    description." *Id.* at 12:4-11.

3           As noted, the allegations against White that support the Bane Act claim are not made

4    against Black.  For example, the TAC alleges that White—not Black—"swerved in front and back

5    of Mr. Benton's car, pulled too close to his rear bumper, flashed a blinding spotlight into the car,

6    and persisted in a series of dangerous maneuvers" as Benton drove at a speed of 65 miles per hour.

7    TAC ¶ 16.  It alleges that Black drove "closely" behind Benton and that the two police cars

8    "boxed in" Benton's vehicle.  *Id.*  And it alleges that Benton had to slow down and change lanes

9    multiple times while trying to avoid both cars.  *Id.* ¶¶ 17-18.  But as alleged in the TAC, the most

10   threatening acts—the swerving in and around Benton's car and repeatedly shining a blinding light

11   inside—were undertaken only by White.  *See id.* ¶¶ 16-18.

12          In addition, there are no allegations from which I can reasonably infer that Black could see

13   that the plaintiffs did not fit the suspect description or perceive their race.  The salient allegations

14   supporting such a finding with regard to White are that he shined a light into the plaintiffs' vehicle

15   multiple times that was bright enough to blind Benton, and that he drove close enough to the

16   vehicle to laugh in response to Benton's question about pulling over.  *See id.*  It is plausible that

17   White saw inside the plaintiffs' car, saw that they did not fit the suspect description, and therefore

18   that his actions were motivated by his perception of their race.  But the TAC makes no such

19   allegations about Black.  It does not allege that he shined a light inside the plaintiffs' car or saw

20   inside.  At most, it alleges that he drove "closely behind" the plaintiffs' vehicle and continued to

21   drive "too close" as the incident unfolded.  *See id.*

22          For these reasons, the Ralph Act claim fails as pleaded against Black.  It is DISMISSED.

23          **c.  Bane Act**

24          The Tom Bane Civil Rights Act provides a cause of action "if a person . . . interferes by

25   threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with

26   the exercise or enjoyment by any individual or individuals of rights" secured by federal or

27   California law.  Cal. Civ. Code § 52.1(b)-(c).  A Bane Act claim requires a violation of a civil or

28   constitutional right.  *Juricich v. Cty. of San Mateo*, No. 19-CV-06413-WHO, 2021 WL 308607, at

*14 (N.D. Cal. Jan. 29, 2021).  It also requires a "showing of 'specific intent' on the part of the officer to violate the constitutional right at issue."  *Id*. at *13 (citing *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1044 (9th Cir. 2018)).

This claim fails because the plaintiffs have not sufficiently alleged that Black violated their constitutional rights nor that he had the specific intent to do so.  In response to this argument by Black, the plaintiffs summarily argue the following:

> Defendants concede that California's Bane Act protects plaintiffs from the violation of their constitutional rights under state law by law enforcement.  Article 1, Section 13 parallels the Fourth Amendment of the U.S. Constitution, and the same principles apply to this third cause of action as applied to the first cause of action for violation of Section 1983.

Oppo. at 9:4-9; *see also* MTD at 12:1-13.

This is both vague and unhelpful.  First, the plaintiffs have not sufficiently stated a section 1983 claim against Black, as explained.  Second, although at one point I held that the plaintiffs had adequately asserted a Bane Act claim against White based on an alleged Fourth Amendment violation, their section 1983 claim is now based on alleged violations of the Fourteenth Amendment, not the Fourth.  *See* Second MTD Order at 12:13-13:21; TAC ¶¶ 30-33.  For the plaintiffs to rest their Bane Act claim against Black upon the Fourth Amendment or California equivalent, they need to clearly allege that he violated those (or any other) constitutional provisions and provide facts specific to him in support.  They have not done this.

The Bane Act claim is DISMISSED.

### d.  IIED

A plaintiff asserting an IIED claim must show: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) that the plaintiff suffered severe or extreme emotional distress; and (3) that the defendant's outrageous conduct actually and proximately caused that emotional distress.  *Corales v. Bennett*, 567 F.3d 554, 571 (9th Cir. 2009) (citations omitted).  "Outrageous" conduct is conduct that is "so extreme as to exceed all bounds of that usually tolerated in a civilized community."  *Tekle v. United States*, 511 F.3d 839, 855 (9th Cir. 2007).

United States District Court
Northern District of California

Black argues that the plaintiffs have not pleaded any non-conclusory facts showing that he engaged in "extreme and outrageous" conduct or did so with the intent of causing, or in reckless disregard of causing, emotional distress.  MTD at 13:3-5.  In response, the plaintiffs argue that it is "unclear why defendants have renewed this argument" despite my prior Orders allowing the IIED claim to proceed.  *See* Oppo. at 9:11-14.

But the issue now is whether the plaintiffs have stated a plausible IIED claim against Black—not whether they have done so against the other defendants.  The plaintiffs forget that although I initially allowed the IIED claim to proceed against the unnamed officer and public entity defendants, I dismissed the claim against White because the FAC did not allege any facts demonstrating his involvement in the encounter.  *See* Second MTD Order at 14:18-25.  Then, in the SAC, the plaintiffs included specific factual allegations regarding White that supported an IIED claim, namely that he served in front and back of Benton's car, pulled too close to its rear bumper, flashed the spotlight inside, and "persisted in a series of dangerous maneuvers" as Benton drove 65 miles per hour.  *See id.* at 14:25-15:2 (citing SAC ¶ 15).

As I wrote in my Order on the first motion to dismiss,

> [s]werving around Benton's car, shining a spotlight inside it, and pulling close to the car's back bumper—all at a speed of 65 miles per hour—demonstrates possible reckless disregard of causing emotional distress.  While one of these acts in isolation might not rise to the level of outrageous conduct, taken together, plaintiffs have plausibly pleaded actions that exceed what is tolerated in a civilized society.

First MTD Order at 15:20-24.  The IIED claim against White ultimately survived because the plaintiffs specifically alleged that he committed these acts.

But again, these facts are alleged against White, not Black.  At most, the plaintiffs allege that Black drove "closely behind" and "too close" to their car as Benton drove at a speed of 65 miles an hour.  TAC ¶¶ 16-17.  But the TAC does not allege that he swerved around Benton's car or shined a spotlight inside.  *See id.* ¶ 16.  Nor does it allege that Black laughed at Benton, which, alongside the other allegations, could support an IIED claim.  Without more, they have not plausibly shown that Black engaged in "extreme and outrageous" conduct intended to cause the plaintiffs emotional distress, or acted in reckless disregard of doing so.

1    The plaintiffs have not plausibly pleaded an IIED claim against Black.  It is DISMISSED.

2        **e.  Negligence**

3    A plaintiff asserting a negligence claim under California law must show: (1) a duty on the

4    part of the defendant; (2) breach of that duty; (3) causation; and (4) damages.  *Strong v.*

5    *California*, 201 Cal. App. 4th 1439, 1449 (2011).

6    According to Black, the TAC "fails to state facts showing that [he] breached a legal duty"

7    owed to the plaintiffs and instead, shows that he acted reasonably under the circumstances.  MTD

8    at 13:25-27.  The plaintiffs offer the same summary response as they did on the IIED claim,

9    asserting that because I previously allowed a negligence claim to proceed against the other

10   defendants, it should proceed against Black.  *See* Oppo. at 9:11-14.

11   The claim fails against Black for the same reason that the IIED claim does: the allegations

12   giving rise to the claim are only pleaded against White.  I previously held that "[t]he purported

13   facts—swerving around a vehicle and blinding its driver with a spotlight, all while driving at a

14   speed of 65 miles per hour—give rise to a reasonable inference that the officers created or

15   increased a peril to plaintiffs."  First MTD Order at 18:7-17; *see also Pierce v. Cty. of Marin*, 291

16   F. Supp. 3d 982, 1001 (N.D. Cal. 2018) (noting that police may have a duty to act when they

17   "created or increased a peril by affirmative acts").  As amended, the SAC alleged that White

18   committed these acts.  *See* Second MTD Order at 14:25-5: 2 (citing SAC ¶ 15).  Without

19   allegations of similar conduct by Black, the plaintiffs have not shown that he had a duty to act or

20   breached it.  Accordingly, the negligence claim against Black is also DISMISSED.

21                                          **CONCLUSION**

22   Black's motion to dismiss is GRANTED with leave to amend.  Any amended complaint is

23   due within 20 days of the issuance of this Order.

24        **IT IS SO ORDERED.**

25   Dated: October 28, 2022



William H. Orrick
United States District Judge

United States District Court
Northern District of California